In The



Court of Appeals



Ninth District of Texas at Beaumont



________________



NO. 09-07-00407-CR


 _____________________



CHRISTOPHER THOMAS WEATHERLY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 93499 






OPINION


 A jury found Christopher Thomas Weatherly guilty of aggravated sexual assault of
J.C., a disabled individual. See Tex. Pen. Code Ann. § 22.021(a)(1)(A)(i), (2)(C) (Vernon
Supp. 2008). The jury assessed punishment at fifteen years of confinement. After an
evidentiary hearing at which defense counsel testified, the trial court denied Weatherly's
motion for new trial. On appeal, Weatherly raises issues asserting ineffective assistance of
counsel, trial court error in admitting evidence, and trial court error in overruling an objection
to the prosecutor's argument. Finding no reversible error, we affirm the judgment. 

Ineffective Assistance

 In his first two issues, Weatherly asserts his trial counsel was ineffective during both
the guilt-innocence and punishment stages. To prevail on a claim of ineffective assistance
of counsel, appellant must satisfy a two-pronged test:

 First, the defendant must show that counsel's performance was deficient. This
requires showing that counsel made errors so serious that counsel was not
functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment. Second, the defendant must show that the deficient performance
prejudiced the defense. This requires showing that counsel's errors were so
serious as to deprive the defendant of a fair trial, a trial whose result is reliable.


Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see
also Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). The defendant must
show a reasonable probability that, but for counsel's errors, the outcome would have been
different. See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The standard
applies to both the guilt-innocence and the punishment phases. See Hernandez v. State, 988
S.W.2d 770 (Tex. Crim. App. 1999). "Appellate review of defense counsel's representation
is highly deferential and presumes that counsel's actions fell within the wide range of
reasonable and professional assistance." Bone, 77 S.W.3d at 833 (footnote omitted). "Any
allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness." Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999) (citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim.
App. 1996)). 

Guilt-Innocence


 Weatherly contends defense counsel should have objected to references to the
"victim" in the court's charge, as well as to the use of the word by the prosecutor and
witnesses. At the motion for new trial hearing, trial counsel testified that he had no tactical
reason for not objecting to the use of the word during the trial. 

 Weatherly cites Talkington v. State, 682 S.W.2d 674 (Tex. App.--Eastland 1984, pet.
ref'd) and Veteto v. State, 8 S.W.3d 805 (Tex. App.--Waco 2000, pet. ref'd). (1) In Talkington,
the jury convicted the appellant of rape, and the appellant argued that the trial court had
improperly commented on the weight of the evidence in the charge by referring to the
complainant as the victim. Talkington, 682 S.W.2d at 674. In reviewing the conviction, the
appellate court noted that "victim" is defined as the person who is the object of a crime. See
id. at 675. The court's charge, when applying the law to the facts, stated:

 [I]f you find and believe from the evidence beyond a reasonable doubt that the
defendant . . . did then and there unlawfully intentionally or knowingly by
means of force or threats have sexual intercourse with (KB), hereinafter called
victim, a female not his wife without the consent of the said victim and by acts,
words, and deeds placed the said victim in fear of harm, then you will find the
defendant guilty of the offense of rape.


Id. at 674-75 (emphasis omitted). The appellate court held that referring in the court's charge
to the complainant as the victim was reversible error "when the issue is whether or not she
consented to the sexual intercourse[.]" Id. at 675. The court explained that the trial judge
is not to express any opinion in the charge as to the weight of the evidence, or use any
argument in the charge calculated to arouse the sympathy or excite the passions of the jury. 
Id. Similarly, in Veteto, the portion of the charge the appellant complained of stated:

 The law provides the testimony of the victim alone, if believed by you beyond
a reasonable doubt, need not be supported by other evidence before a finding
of guilt can be returned. That is to say, the testimony of [A.L.], standing alone,
if believed by you beyond a reasonable doubt, is sufficient proof to support a
finding of guilt. 


Veteto, 8 S.W.3d at 816-17. The appellate court reasoned that the trial court had commented
on the weight of the evidence by referring to the complainant as the "victim," instead of as
the "alleged victim." Id. 

 Veteto and Talkington address the use of "victim" by the court to describe the
complainant in the case before the court. Here, the court did not use "victim" to describe the
complainant. The charge explained that "[a] person commits [aggravated sexual assault] if
the person commits sexual assault and the victim is a disabled individual." The use of the
word in the charge was part of a definition explaining that, if a sexual assault is committed
and the victim of the assault is disabled, then the resulting offense is aggravated sexual
assault. The portion of the charge applying the law to the facts did not assume that the facts
in this case established a sexual assault had occurred. Counsel was not deficient in failing
to object to the use of the word "victim" as part of a definition in the charge. Talkington and
Veteto are inapplicable here; the trial court did not comment on the weight of the evidence
in this case. 

 Appellant also argues that the use of the word "victim" by the prosecutor and two
witnesses should have prompted objections by counsel. He cites to the record of voir dire,
opening argument, and closing argument, where the prosecutor used the word. He cites to
four places in the record where two witnesses referred to J.C. as the victim. The State
argues, however, that apparently the prosecutor "used the term only twice during the entire
evidentiary portion of the trial." 

 Citing Craig v. State, 847 S.W.2d 434 (Tex. App.--El Paso 1993, no pet.), Weatherly
argues that "[t]rial counsel's failure to recognize that the use of the term 'victim' was both
improper and prejudicial was, by his own admission, objectively deficient conduct that was
not the result of any trial strategy." In Craig, the court held that, given several instances of
deficient performance of counsel throughout the trial, including one instance where trial
counsel framed his cross-examination questions in a manner that accepted the State's
interpretation of the evidence, appellant did not receive reasonably effective assistance of
counsel. See Craig, 847 S.W.2d at 435-36. 

 While use of the word "victim" assumes a crime has been committed, the fact that a
prosecutor is of that view would not surprise a reasonable juror, nor would the prosecutor's
use of the word in argument or voir dire generally be understood as anything other than the
contention of the prosecution. In this case, it does not appear that the trial judge used the
word "victim" in the presence of the jury to refer to the complainant, or commented on the
evidence. The word is not so inflammatory or prejudicial as to necessarily cause harm to the
defendant when used occasionally in a lengthy trial by the attorneys or witnesses. 
Considering the totality of counsel's representation and the totality of the record, the failure
to object to the use of the word "victim" in the cited instances in this trial was not an error
"'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant[.]"' 
See Ex parte McFarland, 163 S.W.3d 743, 753 (Tex. Crim. App. 2005) (quoting Strickland,
466 U.S. at 687). (2) 

 Weatherly argues that we must consider the conduct in the context of other conduct
by his counsel. He points to the fact that Officer Anders testified, without objection, that
Weatherly's wife told him that J.C. had called her and accused Weatherly of rape. Counsel
testified at the motion for new trial hearing that he did not object to Anders's testimony,
because counsel knew Weatherly's wife would testify to that same fact. Weatherly's wife
also testified that J.C. called her back less than thirty minutes later and apologized for lying. 

 Anders also testified that he spoke to J.C. at the hospital, and that she indicated to him
that Weatherly had sexually assaulted her. The trial court sustained trial counsel's hearsay
objection to this testimony. Weatherly notes that trial counsel did not request that the jurors
be instructed to disregard the response. 

 Weatherly also complains that his counsel did not object to certain testimony by Betty
Cato. Cato, a former specialist with Adult Protective Services, testified that she interviewed
J.C. During the interview, J.C. stated that around the time of the assault she asked
Weatherly, "Why did you hurt me?" and he answered, "Because I could." At the motion for
new trial hearing, trial counsel indicated that one reason for not objecting to Cato's testimony
was because he believed J.C. mumbled "something along those lines" during her testimony,
and, although he heard J.C.'s testimony because he was standing within five feet of her, he
was unsure whether the court reporter or jury heard that portion of J.C.'s testimony. He
explained he did not want to call attention to the damaging testimony and thereby risk further
emphasizing J.C.'s testimony that may have gone unnoticed:

 A.: You know, I remember her saying something along those lines; but I have
the advantage of being less than -- the Court allowed me to stand this close to
her (indicating). She was sitting in the chair I'm in, and I was less than five
feet away from her. I know I was able to hear a lot more, of course, than what
that jury could hear.

 And I recall that statement coming out. Whether or not the court
reporter got it down or if that jury heard it, I don't know. But I certainly know
that I wasn't going to draw any more attention to it whenever she came along
and testified about it. It was bad enough as it was. 


The record does not reveal this testimony by J.C. However, portions of J.C.'s testimony
regarding what Weatherly said to her were recorded as "unintelligible" by the court reporter. 

 Weatherly also complains that his counsel did not object to testimony by Cato which
he characterizes as "improper backdoor opinion testimony that [J.C.] was telling the truth[.]"
The State agrees that it would be improper for a witness to offer an opinion as to the
truthfulness of another witness, but argues "that did not happen here." The State argues Cato
simply pointed out consistencies, and although she was asked whether she made credibility
assessments, "the record is silent as to what that assessment actually was." Defense counsel
testified he did not object because Cato was "coming across as a biased witness[,]" and it
would not have been beneficial to object. The State argues the questions to Cato were an
attempt to establish the consistency of J.C.'s testimony, not its truthfulness. In defense
counsel's questioning of a forensic psychologist, it appears the defense suggested the
consistency in J.C.'s testimony indicated a "practice effect." 

 In judging counsel's performance, '"the totality of the representation"' is considered
and '"judicial scrutiny of counsel's performance must be highly deferential,'" with every
attempt made to extinguish hindsight's distorting effects. Robertson v. State, 187 S.W.3d
475, 483 (Tex. Crim. App. 2006) (quoting McFarland v. State, 845 S.W.2d 824, 843 (Tex.
Crim. App. 1992)). "[I]solated instances in the record reflecting errors of omission or
commission do not render counsel's performance ineffective, nor can ineffective assistance
of counsel be established by isolating one portion of trial counsel's performance for
examination." McFarland, 845 S.W.2d at 843. Decisions on whether to object and on what
grounds must often be made quickly. Defense counsel explained his strategy, explained the
context, and explained his decisions not to object to certain testimony. We are to be "highly
deferential" in scrutinizing counsel's performance. See id. Considering the totality of the
representation, appellant has not shown counsel's representation was deficient. See id. 

 Furthermore, Strickland requires proof of prejudice as well as proof of professional
incompetence. See Bone, 77 S.W.3d at 837. The conduct appellant cites does not undermine
confidence in the verdict. See id. J.C. testified the sexual assault occurred in Weatherly's
van. The State's expert testified to a reasonable degree of scientific certainty that DNA from
a semen stain found in the van matched Weatherly's DNA. Although Weatherly argues he
was prejudiced by the failure of his counsel to object in the identified instances when
objectionable testimony was offered or comment made, or to request an instruction to
disregard, Weatherly has not demonstrated a reasonable probability that, but for the failure
to object or request an instruction, the result of the proceeding would have been different. 
See Strickland, 466 U.S. at 687, 694 ("This requires showing that counsel's errors were so
serious as to deprive the defendant of a fair trial, a trial whose result is reliable."); see also
Bone, 77 S.W.3d at 833. Issue one is overruled.

Punishment

 In his second issue, Weatherly states that trial counsel's conduct was deficient during
the punishment stage because he failed to object to the prosecutor's final argument. 
Weatherly also asserts trial counsel failed to object to testimony that Weatherly "groomed"
J.C. for future sexual assaults. 

 Weatherly complains that trial counsel's conduct was deficient because he failed to
object during the prosecutor's final argument that: (1) improperly commented on Weatherly's
failure to testify, and (2) asked jurors to put themselves into the shoes of J.C. and her family. 
Proper areas of final jury argument are (1) summation of the evidence, (2) reasonable
deductions from the evidence, (3) answer to arguments of opposing counsel, and (4) proper
pleas for law enforcement. See Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App.
2000). 

 Weatherly argues trial counsel was deficient in failing to object to the following
comments by the State in the rebuttal portion of the final argument during the punishment
phase: 

 And [Fairley] told you, importantly, that in order to be rehabilitated one
must take responsibility for his action, first and foremost, real responsibility
for what he has done wrong. I suggest to you that's not present in this case.

 In the cases that Probation handles, he said almost 99 percent, well over
90 percent of the folks that get probation for things like burglarizing a car,
stealing something out of a garage and whatnot, 99 percent of those folks go
up in front of the judge and they're contrite and they say, "I did it."

 . . . . 

 A very, very high percentage of folks that get probation are folks that
have already taken responsibility for their actions. . . . 


Weatherly contends this was an improper comment on his failure to testify. 

 As the Director of the Adult Probation Department in Jefferson County, and called as
a defense witness, Fairley testified that the "majority of our folks," well above 90 percent,
are placed on probation through plea bargains. He also testified that to successfully complete
county sex offender treatment programs, an offender must admit to being a sex offender. He
testified that "if they don't accept the responsibility, then really treatment's not -- it's not for
'em." 

 At the motion for new trial hearing, trial counsel testified that he did not object to the
prosecutor's argument because he thought the argument was a permissible attempt to respond
to Fairley's testimony and defense counsel's argument for probation. See Wesbrook, 29
S.W.3d at 115. One understanding of the prosecutor's argument was that probation is usually
part of a plea bargain, as Fairley testified. 

 However, the State cannot comment even indirectly on a defendant's exercise of the
right to not testify. See Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed. 2d
106 (1965) (U.S. Const. amend. V); Stafford v. State, 578 S.W.2d 394, 395 (Tex. Crim.
App. 1978) (Tex. Const. art. I § 10); see also Tex. Code Crim. Proc. Ann. art. 38.08
(Vernon 2005). An argument is an improper comment only if either "manifestly intended,
or of such a character that the jury would naturally and necessarily take it to be a comment
on the defendant's failure to testify." See Cook v. State, 702 S.W.2d 597, 599 (Tex. Crim.
App. 1984). The argument is assessed from the standpoint of the jury; the issue is whether
the jury would "naturally and necessarily" view the argument as a comment on the failure to
testify. See id.; see also Griffin v. State, 554 S.W.2d 688, 689-90 (Tex. Crim. App. 1977). 

 An argument in the punishment phase to the effect that a defendant lacked remorse
has been held to be a comment on the defendant's failure to testify in the punishment phase,
even though the defendant testified at the guilt-innocence stage. See Sauceda v. State, 859
S.W.2d 469, 474-75 (Tex. App.--Dallas 1993, pet. ref'd). In Sauceda, the court ordered a
new punishment hearing. Id. at 475. Essentially, calling the jury's attention to a lack of
evidence--evidence that only the testimony of the defendant could supply--may be an
impermissible comment on the defendant's silence. See Montoya v. State, 744 S.W.2d 15,
34-35 (Tex. Crim. App. 1987), overruled on other grounds by Cockrell v. Tate, 933 S.W.2d
73, 89 (Tex. Crim. App. 1996). 

 Under certain circumstances an otherwise improper comment on the defendant's
exercise of his right to not testify may be considered proper argument because invited by a
defense argument. See United States v. Robinson, 485 U.S. 25, 33-34, 108 S.Ct. 864, 99
L.Ed.2d 23 (1988). An invited argument may not exceed "the scope of defense counsel's
invitation." See Franks v. State, 574 S.W.2d 124, 126 (Tex. Crim. App. 1978). 

 At punishment, the jury heard the defense argument for probation. The evidence from
witnesses during the punishment phase indicated eventual acceptance of responsibility was
essential to the success of probation. When defense counsel began his argument during the
punishment phase, he argued: "I hope y'all appreciate the fact that right now I've just agreed
to disagree with you. Okay? I'm not asking you to understand my side, but just let me have
that." Essentially, the defense argument suggested that the defense disagreed with the jury's
verdict, and that the defendant should receive probation. The State's argument concerning
probation was a reference to and inference drawn from the testimony of the witnesses
concerning probation, and was a response to the argument of defense counsel. Appellant has
not shown that the failure to object to the prosecutor's argument, under these circumstances,
was conduct falling outside the "range of reasonable and professional assistance." See Bone,
77 S.W.3d at 833.

 Weatherly also maintains the following argument by the State during punishment
impermissibly asked jurors to place themselves in J.C.'s or her family's shoes: 

 What do you suppose it's like for the parent of a child who is the victim
of sexual assault - - aggravated sexual assault or the parent of a - - to be the
parent of a special child, a child like [J.C.]? Have you stopped to think - - and
I'm sure you have - - what it's like for that person?


Immediately before this argument, the prosecutor stated, "Yesterday [Weatherly's trial
counsel] talked to you all and he invited you to put your -- he did it a number of times in the
trial -- put yourself in the position of someone who's been accused of this type of offense. 
What would you do? Well, have you ever heard the expression[,] 'Turnabout is good play?'"

 This Court and others have held it is improper for a prosecutor to ask the jury
members to put themselves in the shoes of the victim. See Williams v. State, 732 S.W.2d
762, 765 (Tex. App.--Beaumont 1987, no pet.); Boyington v. State, 738 S.W.2d 704,709
(Tex. App.--Houston [1st Dist.] 1985, no pet.). When questioned at the motion for new trial
hearing as to why he did not object to the argument, trial counsel explained:

 [M]y theme from the beginning was to try to bridge the gap between the victim
and the defendant. . . . So, from the beginning my theme in voir dire was - -
and I'm going to paraphrase. . . . I was trying to get them to understand that if
they were in [Weatherly]'s shoes, that they would have asked for similar things
to have been done. And I used the polar example, which is even if you were
in the victim's shoes, you would want - - would have wanted certain things to
have been done.

 Those statements were made in voir dire. Those statements came back
when they were - - as I tried to tie in my voir dire to closing arguments. So, I
reiterated those things again.

 So, I felt like what [the State] said, although may have been damaging,
was certainly responsive to what my overall theme was and what our theory
was.


Defense counsel considered the prosecutor's argument as a response to his trial theme, and
a response to his argument. He had asked the jury to place themselves in the shoes of the
accused and, as the "polar example, which is even if you were in the victim's shoes, you
would want--would have wanted certain things to have been done."

 Some courts have made a distinction between argument concerning the pain, injury,
or loss suffered by the victim, and improper argument "asking the jury to place themselves
in the shoes of the victim to consider what punishment the victim would want to impose upon
the defendant." See Torres v. State, 92 S.W.3d 911, 922-23 (Tex. App.--Houston [14th Dist.]
2002, pet. ref'd) (footnote omitted). In Torres, the court explained:

 The distinction between fully appreciating the victim's pain and suffering, on
the one hand, versus how the victim would want the defendant punished, on
the other, is a subtle, but important distinction. In the first instance, the
prosecutor is merely summarizing the evidence, making a reasonable
deduction from the evidence, or making a legitimate plea for law enforcement. 
In the second instance, the prosecutor is asking the jury to assess punishment
not on impartial objective notions of justice, but upon personal passion
accelerated by the outrage every human being naturally feels toward one who
has wrongfully caused him pain, embarrassment, grief, or loss.


Id. at 922. 

 Considered in the context of the prosecutor's argument that followed, the excerpt in
question was part of an argument for consideration of the loss suffered by the victim and her
family and was part of a legitimate plea for law enforcement, rather than one urging the jury
to punish the defendant as the victim and her family would like the defendant punished. See
Id. at S.W.3d at 922-23. Moreover, the argument did not exceed "the scope of defense
counsel's invitation" through his trial theme use of the "polar example." See Franks, 574
S.W.2d at 126. Appellant has not shown deficient performance by defense counsel in failing
to object to the prosecutor's argument. Furthermore, appellant has not shown on this record
that there is a reasonable probability the result of the punishment proceeding would have
been different had an objection been made to the prosecutor's argument, or that defense
counsel's conduct affected the reliability of the trial process. See Strickland, 466 U.S. at 694;
see also Hernandez, 988 S.W.2d at 772. 

 Weatherly also asserts that trial counsel's performance was deficient in that he failed
to object to expert testimony that Weatherly "groomed" J.C. for sexual assaults. Specifically,
Weatherly argues that the State bore the burden of proving Detective Wilmore's
qualifications as an expert on grooming, and that the theory is valid and accepted by the
scientific community. 

 The burden of establishing a witness's qualifications is with the party offering the
testimony. Matson v. State, 819 S.W.2d 839, 851 (Tex. Crim. App. 1991). Rule 702 states,
"If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise." Tex. R. Evid. 702. No rigid formula exists for determining whether
a particular witness is qualified to testify as an expert. Harnett v. State, 38 S.W.3d 650, 658
(Tex. App.--Austin 2000, pet. ref'd). The rule itself provides that the requisite expertise may
be acquired through knowledge, skill, experience, training, or education. See id. Rule 705(b)
of the Texas Rules of Evidence allows trial counsel to conduct a voir-dire examination of a
witness. See Tex. R. Evid. 705(b). 

 During the punishment stage of trial, Jeff Wilmore testified for the State. He has been
a police officer for almost thirty years and an investigator for nineteen years. Over the last
nineteen years, he has attended training sessions across the country and, on average, has
investigated approximately twenty sexual assault and child abuse cases per year. During the
guilt-innocence stage, he testified that he was involved in the investigation regarding J.C.'s
outcry. He took multiple witness statements and interviewed Weatherly.

 Wilmore testified during the punishment stage that it was his opinion based on his
investigation that Weatherly had been "grooming" J.C. prior to her outcry. His investigation
led him to discover additional alleged instances of sexual abuse of J.C. by Weatherly. He
explained that sexual predators will often develop a relationship with a victim to build trust,
and then start committing small offenses to see if the victim makes an outcry. Those offenses
build up over time into more serious offenses.

 At the motion for new trial hearing, trial counsel testified that he did not view
Wilmore's testimony as expert testimony. Trial counsel commented at the hearing that he
frequently uses a Rule 705(b) request as an opportunity to explore things outside the presence
of the jury, but did not request one here because "grooming is not something [he] consider[s]
as any kind of a science one way or another." 

 In Dunnington v. State, 740 S.W.2d 899, 902 (Tex. App.--El Paso 1987, pet. ref'd),
the court reasoned that testimony of the "conditioning process" used by offenders on child
victims was not an issue "so foreign to the lay juror's experience that the lack of expert
interpretation would deprive the evidence of full significance. . . ." Id. at 902. Essentially,
the court reasoned the jury could understand the purpose and effect of the defendant's
conduct towards the victim without expert testimony. In Dunnington, the admission of the
witness's opinions was considered error. See id; but cf. Kos v. State, 15 S.W.3d 633, 642
(Tex. App.--Dallas 2000, pet. ref'd) ("[W]e necessarily reject appellant's reliance on [the]
opinion in Dunnington [.]"). 

 Weatherly does not make the argument adopted by the court in Dunnington. Instead,
he argues that the officer's testimony was an inadmissible expert opinion because it was
unreliable and the officer lacked expertise. Whether the opinion testimony requires expertise
or not, as was discussed in Dunnington, an objection was required to preserve any error by
the trial court in allowing the opinion to be expressed by the officer. Weatherly complains
only of the lack of an objection as to expertise and reliability, however.

 The State established the expertise of the officer to express the opinion and a
sufficient basis for this opinion. See Hernandez v. State, 53 S.W.3d 742, 751 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd) (stating that experience may provide a sufficient basis
for an expert's testimony); Hardin v. State, 20 S.W.3d 84, 92 (Tex. App.--Texarkana 2000,
pet. ref'd) (holding expert's twenty years of experience investigating and supervising sex
offenders and her extensive and continuous training qualified her to testify as an expert on
the issue of whether a convicted sex offender posed a continuing threat to society). The
evidence indicated appellant's actions were "part of a larger, more calculated plan that was
carried out over a lengthy period of time." See Kos, 15 S.W.3d at 641-642 (expert testimony
concerning "seduction type"-preferential-offender profile relevant at punishment). The
opinion testimony was admitted at the punishment phase based on the officer's experience
and training in the subject matter, and on sufficient specific facts developed in his
investigation in the case. Considering the entire trial record, appellant has not demonstrated
that objecting to the officer's testimony, or conducting voir dire examination of the officer,
would probably have resulted in the exclusion of the testimony. Nothing in the motion for
new trial hearing record suggests that the opinion testimony lacked a reliable foundation or
that the officer lacked the training and experience to express the opinion. See generally
Nenno v. State, 970 S.W.2d 549, 560-62 (Tex. Crim. App. 1998), overruled on other grounds
by State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App. 1999)). The record in this direct appeal
is not "sufficient to show that counsel's representation was so deficient as to meet the first
part of the Strickland standard." See Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002). Issue two is overruled.

Hearsay Testimony

 Weatherly complains in issue three that the trial court erred in permitting the
prosecutor to elicit testimony from Betty Cato which Weatherly asserts is hearsay testimony
from Cato about prior consistent statements J.C. and others had made. The trial court
allowed the testimony based on Texas Rule of Evidence 801(e)(1)(B). Under that rule, a
statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's
testimony and is offered to rebut an express or implied charge against the declarant of recent
fabrication or improper influence or motive. Tex. R. Evid. 801(e)(1)(B). The Court of
Criminal Appeals in Hammons v. State, 239 S.W.3d 798, 804-09 (Tex. Crim. App. 2007),
explained the non-hearsay status of that evidence, and the trial court's latitude in applying
the rule, as follows:

 The rule sets forth a minimal foundation requirement of an implied or
express charge of fabrication or improper motive. It is minimal. . . . "[T]here
need be only a suggestion that the witness consciously altered his testimony in
order to permit the use of earlier statements that are generally consistent with
the testimony at trial." 

 . . . .

 As with most evidentiary rulings, a trial court's determination that a
prior consistent statement is admissible because the cross-examination
suggested or implied an assertion of recent fabrication or improper motive is
reviewed only for an abuse of discretion.


Id. at 804, 806 (footnotes omitted). In Hammons, the Court held the trial court did not abuse
its discretion in admitting a complainant's prior consistent statements to two different
witnesses. See id. at 809. 

 A witness other than the declarant may be called to testify concerning the prior
consistent statements when the declarant is available for cross-examination. See id.; cf.
Missouri Pac. R.R. Co. v. Vlach, 687 S.W.2d 414, 417-18 (Tex. App.--Houston [14th Dist.]
1985, writ ref'd n.r.e.) (statement properly excluded when no opportunity to cross-examine
declarant); see generally United States v. Green, 258 F.3d 683, 692 (7th Cir. 2001) (similar
federal rule does not bar introduction of prior consistent statement through witness other than
the declarant when declarant available for cross-examination). 

 Appellant argues there was no charge of recent fabrication, or improper influence or
motive. The record reflects otherwise. During the cross-examination of Dr. Curtis Wills, the
forensic psychologist hired by the district attorney's office to examine J.C.'s capabilities,
defense counsel questioned Dr. Wills about a theory called "practice effect." Dr. Wills
explained that with the passage of time there is a deterioration of the memory with each
retelling of a story, but the "practice effect" occurs when subsequent versions of the story
stay more consistent with the original story because of the repeated retelling of the story. 
Defense counsel asked Dr. Wills if the practice effect is more apparent with a mentally
challenged individual, and whether a mentally challenged individual's behavior would be
reinforced as a result of a desired initial response to the behavior. Defense counsel also
questioned the sexual assault nurse examiner about whether the anal area abrasion found on
J.C. could have been caused by irritable bowel syndrome and hemorrhoids. Weatherly's wife
testified that she believed J.C. fabricated the sexual assault because J.C. was upset after
Weatherly's wife would not let J.C. come over, and that after the initial outcry, J.C. called
Weatherly's wife and expressed remorse for lying. Weatherly's wife also testified that J.C.
lied about Weatherly's wife hitting J.C. on a prior occasion and that J.C. later admitted it was
a lie.

 The trial court could reasonably conclude on this record the defense charged recent
fabrication or improper motive. Appellant also argues that even if the trial court properly
concluded he raised the defense of recent fabrication, the prior consistent statements were
not made at a time before J.C. had a motive to testify falsely. However, the trial court could
reasonably conclude the prior statements were closer in time to the incident and made under
circumstances and at a time where there was no "supposed motive to falsify[.]" See
Hammons , 239 S.W.3d at 804. The trial court did not abuse its discretion in admitting the
prior consistent statements. Issue three is overruled.Improper Argument During Punishment Stage

 In issue four, Weatherly maintains the trial court erred in overruling his objection after
the prosecutor improperly argued matters outside the record during the punishment stage of
the trial. During final argument, the prosecutor stated that "[a] very, very high percentage
of folks that get probation are folks that have already taken responsibility for their actions;
and, again, . . . not for crimes like aggravated sexual assault on a disabled [person]." Defense
counsel objected that the comment was outside the record. The trial court overruled the
objection.

 This portion of the prosecutor's final argument referred to the testimony of Michael
Fairley, Director of the Jefferson County Probation Department. Fairley testified that sex
offenders on probation in Jefferson County participate in a sex offender program. A
requirement of the first part of the program is for sex offenders to admit guilt for the offense,
and if this requirement is not met, they are removed from the program and "are referred back
to the Court." According to Fairley, someone who has been found guilty of a prior felony
offense would not typically receive probation for "this type of offense."

 We find no evidence in the record that Weatherly had a prior felony offense. Other
evidence indicated first time offenders had been placed on probation. In overruling
Weatherly's objection that the argument was outside the record, the court instructed that
"[a]gain, the jury is going to recall what the evidence is." In response to a similar objection
earlier in the prosecutor's argument, the court previously instructed that "[t]he jury will recall
the evidence and the jury will make the decision on what is accurate and what is not accurate.
. . ." We assume the jury recalled the evidence correctly. When we consider the record as a
whole, the prosecutor's argument did not have a substantial influence on the outcome of the
proceeding so as to require a new punishment hearing. See Burnett v. State, 88 S.W.3d 633,
637 (Tex. Crim. App. 2002); see also Tex. R. App. P. 44.2(b). Issue four is overruled. 

Conclusion


 From a review of the complete record of this trial and considering the totality of the
representation, we conclude appellant was fully represented by competent counsel
"functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." See
Strickland, 466 U.S. at 687. Appellant's assertions of errors by his trial counsel and by the
trial court do not demonstrate that he was deprived of a fair trial, that the trial result is
unreliable, or that error occurred requiring a reversal of the trial court's judgment. See id.; 
Tex. R. App. P. 44.2. Appellant's issues are overruled. The judgment is affirmed.

 AFFIRMED. DAVID GAULTNEY

 Justice

Submitted on December 15, 2008

Opinion Delivered April 1, 2009

Publish


Before Gaultney, Kreger, and Horton, JJ. 
1. Veteto has been abrogated on other grounds by State v. Crook, 248 S.W.3d 172, 174-75 (Tex. Crim. App. 2008).
2. See generally Cano v. State, No. 14-06-00377-CR, 2007 Tex. App. LEXIS 7881, at
**28-29 (Tex. App.--Houston [14th Dist.] Oct. 4, 2007, pet. ref'd) (not designated for
publication) (Defense counsel's own isolated references to the complainant as the victim did
not demonstrate deficient conduct.); and Byler v. State, No. 03-01-00012, 2002 Tex. App.
LEXIS 1667, at **9-10 (Tex. App.--Austin Mar. 7, 2002, pet. ref'd) (not designated for
publication) (Counsel's failure to object to use of the term victim was not deficient.). See
Tex. R. App. P. 47.7. ("Opinions . . . not designated for publication by the court of appeals
under these or prior rules have no precedential value but may be cited with the notation, '(not
designated for publication).'").