

## NUMBER 13-09-00325-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**CHARLES A. SATTERLEE,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 36th District Court
### of Aransas County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Garza
Memorandum Opinion by Chief Justice Valdez**

After a jury trial, appellant, Charles A. Satterlee, was convicted of indecency with a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (d) (Vernon Supp. 2009). Satterlee was sentenced to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. By four issues, which we

characterize as two, Satterlee contends that: (1) the trial court erred by allowing the State to present hearsay testimony; and (2) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

On May 27, 2008, Satterlee was indicted on two counts of indecency with a child after an outcry was made by a twelve-year-old, L.A.[1] Prior to trial, the State abandoned the second count and proceeded to trial only on the first. Trial commenced on April 7, 2009.

### A. The State's Evidence

L.A.'s grandmother, Elena, testified that she dated Satterlee between 2000 and 2007. In 2002, Elena, Satterlee, and Elena's son, Andrew, moved into a home in Rockport, Texas. L.A. and her mother, Rachel, moved into the home in October 2005. Elena testified that, on one occasion, she witnessed Satterlee grab L.A.'s breasts, pull her close, lick her face, and grab her buttocks.

L.A.'s mother, Rachel, testified that she and L.A. lived with Elena and Satterlee between October 2005 and November 2006. Upon moving into the home, Rachel and L.A. slept in a living room that had been converted into a bedroom. Later, Rachel and L.A. slept on bunk beds in a bedroom adjacent to Elena and Satterlee's. Rachel testified that on one occasion, Rachel saw Satterlee pull L.A. towards him and pinch her nipple. Soon after, Rachel and L.A. moved out of Elena's house, and Elena and Satterlee separated. After moving out, Rachel talked to L.A. about the incident she witnessed with Satterlee, and L.A.

---

[1] To protect the child's privacy, we refer to the child by her initials and to her relatives by pseudonym. *See* TEX. R. APP. P. 9.8.

revealed to Rachel that Satterlee had touched her "private parts" on another occasion. Rachel contacted the police who arranged an examination for L.A. by Sexual Assault Nurse Examiner ("SANE") Carol McLaughlin.

L.A. testified that she and her mother resided with Elena and Satterlee. L.A. recalled that, when she was around eleven years old, Satterlee would come to her room and watch her sleep. L.A. testified that on one occasion, Satterlee came to her room and touched her vaginal area with his hand. According to L.A., Satterlee rubbed his penis against her vaginal area but never "went inside her." L.A. stated that Satterlee's penis was "hard" and that she felt "sore" after the contact. L.A. also stated that she was "afraid" of Satterlee because he threatened to injure her family and friends if she told anyone about what he did.

McLaughlin testified that she isolated L.A. in an exam room and took a medical history "in order to know how to treat her properly." McLaughlin stated that L.A. told her that "Charles, Chuck he had sex with me. He grabbed stuff, like privates. He put his private to mine and rubbed it there. It was hard. He was grabbing my boobs." According to McLaughlin, L.A. also stated that Satterlee grabbed her "crotch" and "butt" and would make L.A. "touch his private part all over." McLaughlin testified that L.A. told her that these events took place between fourth and fifth grade.

McLaughlin also performed a full body examination, including a magnified external examination of L.A.'s genital area. No physical injuries or genital trauma were found. McLaughlin testified that the lack of physical evidence is "the norm." According to McLaughlin, "eighty percent" of her cases show no sign of injury.

**B. Satterlee's Evidence**

Satterlee testified that he was never alone with nor had any type of sexual contact with L.A. He accused Elena of wanting to "get back" at him. When asked why Elena would want to get back at him, Satterlee referred to an email that he said talked about hate; Satterlee did not elaborate.

Pamela Toledo, a friend of both Satterlee and Elena, testified that she had visited Elena's home many times and never witnessed Satterlee mistreat L.A. or behave in a violent manner. However, Toledo stated that she had witnessed L.A. "mistreat" Satterlee, but offered no explanation of the alleged mistreatment. Toledo also testified that the day after Satterlee left, Elena told her that "she was going to get vengeance for [Satterlee] leaving her on [sic] the drop of a hat."

At the conclusion of the trial, the jury found Satterlee guilty of indecency with a child and sentenced him to ten years' imprisonment. *See id.* Satterlee timely filed a motion for new trial. After holding a hearing, the trial court denied Satterlee's motion for new trial. This appeal ensued.

## II. HEARSAY RULE

In his first issue, Satterlee argues that the trial court erred in admitting inadmissible hearsay from McLaughlin into evidence.

### A. Standard of Review and Applicable Law

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). A trial court abuses its discretion when its determination of evidentiary admissibility falls outside

4

the zone of reasonable disagreement. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

"Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered into evidence to provide the truth of the matter asserted." TEX. R. EVID. 801(d). A statement made for purposes of medical diagnosis or treatment in which the patient describes medical history related to past or present symptoms and the cause or source thereof, if reasonably pertinent to diagnosis or treatment, is an exception to the hearsay rule. *Id.* at R. 803(4). This hearsay exception is based on the idea that a patient understands the importance of being truthful with medical personnel in order to receive an accurate diagnosis and treatment. *See Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.–Austin 1991, pet. ref'd).

## B. Analysis

The State introduced McLaughlin's notes from her examination of L.A. through her testimony. McLaughlin read to the jury statements made by L.A. about the abuse. Satterlee argues that L.A.'s statements to McLaughlin should be excluded as hearsay because they are not subject to Texas Rule of Evidence 803(4). *See* TEX. R. EVID. 803(4). Satterlee contends that L.A.'s statements to McLaughlin were not for the purpose of medical diagnosis because McLaughlin did not "diagnos[e] the child or treat her for anything. Satterlee also argues that L.A. was not explicitly informed about the importance of her truthfulness because McLaughlin did not preface L.A.'s medical history by warning her of the importance of what she said.

The purpose of rule 803(4) is to allow in evidence that is highly credible. *See id.*

5

L.A.'s statements given for medical diagnosis or treatment are likely to be true due to a patient's self-interest in her health. *See id.* Texas courts have held that a trial court does not abuse its discretion by admitting statements made during a SANE examination. *See Green v. State*, 191 S.W.3d 888, 896 (Tex. App.–Houston [14th Dist] 2006, pet. ref'd); *see also Little v. State*, No. 04-08-00723-CR, 2009 Tex. App. LEXIS 7091, at \*\*3-6 (Tex. App.–San Antonio Sept. 9, 2009, no pet.) (mem. op., not designated for publication).

The record shows that L.A. met with McLaughlin alone, isolated from anyone who could influence her responses. McLaughlin testified that the examination was conducted in four stages, only the last of which was intended to collect evidence for police. McLaughlin also stated that in her experience, which encompasses approximately 3,000 sexual assault examinations, she has found that medical histories are relevant to medical diagnosis and treatment of the victim. McLaughlin explained, "I need to know what happened for diagnosis and treatment, I need to know where to look; if they need any medications, if lab work needs to be done, so I have to know what happened." Therefore, the medical history is at a minimum reasonably pertinent to diagnosis or treatment, and hence admissible under Texas Rule of Evidence 803(4). *See* TEX. R. EVID. 803(4); *see also Fleming*, 819 S.W.2d at 247.

To determine whether a child understands the importance of telling the truth, we look to the entire record. *See Green*, 191 S.W.3d at 896. Although no specific inquiry was made to determine whether L.A. appreciated the need to be truthful in her statements to McLaughlin, the record is sufficient to support such a conclusion. *See Fleming,* 819 S.W.2d at 247. L.A. made her statements in a hospital, alone, and received a full-body

6

examination consistent with the medical history she gave. L.A. was twelve years old at the time of her examination. Further, the manner in which L.A. described Satterlee's conduct was, according to McLaughlin's sizable experience, discernable and consistent with descriptions provided by other victims her age. Finally, L.A.'s own health and welfare was an incentive to be thorough and honest with McLaughlin.

L.A. was taken to Driscoll Children's Hospital because she made an outcry regarding possible sexual abuse. McLaughlin's primary goal is to ensure the safety of her patients. To that end, it is reasonable for McLaughlin to ask what happened in order to know where the harm occurred and what type of tests she may be required to run. Also, it is relevant for her to know who the perpetrator is in order to treat any latent sexually transmitted diseases the perpetrator might have and to prevent the victim from returning to an abusive home. While there was no apparent injury or any issue to diagnose, the medical history was still necessary to conclude that no diagnosis was needed.

With these considerations, and after reviewing the entire record, we conclude that the evidence is sufficient to support a finding that the medical history taken by McLaughlin was given for the purpose of medical diagnosis and treatment, and L.A., who was twelve at the time of the examination, understood the need to be truthful. Accordingly, we conclude McLaughlin's testimony comes under the hearsay exception in Texas Rule of Evidence 803(4). *See* TEX. R. EVID. 803(4); *see also Fleming,* 819 S.W.2d at 247. Therefore, we hold the trial court did not abuse its discretion in admitting the evidence. *See Burden*, 55 S.W.3d at 615; *see also McCarty*, 257 S.W.3d at 239.

7

### III. Ineffective Assistance of Counsel

In his second issue, Satterlee contends that his trial counsel rendered ineffective assistance by: (1) failing to object to McLaughlin's testimony; (2) failing to "ask the most relevant questions"; and (3) convincing Satterlee to refuse a plea bargain which would have granted him community supervision instead of the prison term he received.

### A. Standard of Review and Applicable Law

To establish ineffective assistance of counsel, Satterlee must show that: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Dewberry v. State*, 4 S.W.3d 735, 757 (Tex. Crim. App. 1999); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). Whether this test has been satisfied is to be judged on appeal by the totality of representation, not by any isolated acts or omissions. *Jaynes*, 216 S.W.3d at 851. Satterlee has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if the appellant overcomes the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. The right to "reasonably effective

assistance of counsel" does not guarantee errorless counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). Moreover, the acts or omissions that form the basis of appellant's claim of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814; *Jaynes*, 216 S.W.3d at 851.

A silent record which provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance. *Thompson,* 9 S.W.3d at 813-14. To warrant reversal without affording counsel an opportunity to explain his actions, the conduct must be "so outrageous that no competent attorney would have engaged in it." *Roberts v. State,* 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

**B.    Analysis**

Satterlee contends that trial counsel provided ineffective assistance by failing to object to McLaughlin's testimony regarding the statements L.A. made to her during the SANE examination. As previously discussed, McLaughlin's testimony was properly admitted because it related to a statement made for medical diagnosis or treatment. *See* TEX. R. EVID. 803(4). Thus, trial counsel's failure to pursue the objection did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 684; *Dewberry*, 4 S.W.3d at 757. Satterlee also contends that trial counsel rendered ineffective assistance by failing to "ask the most relevant questions." Specifically, Satterlee asserts, inter alia, that trial counsel failed to present evidence that L.A. did not sleep in a bunk bed, or elicit

testimony regarding Satterlee's alleged skin "lesions" and sexually transmitted diseases. Trial counsel testified at the hearing on Satterlee's motion for new trial; however, counsel only addressed the issue of Satterlee's sexually transmitted skin lesions. Although Satterlee did not provide counsel with any "actual proof" that he had a condition that resulted in lesions, counsel expressed "regret" for not asking L.A. during cross-examination to "describe [Satterlee's] body," a description that possibly could have been used to refute L.A.'s credibility.

When trial counsel's reasons for failing to object do not appear in the record, we presume trial strategy. *See Ortiz v. State*, 93 S.W.3d 79, 95 (Tex. Crim. App. 2002). Notwithstanding counsel's remarks, the record is devoid of evidence of counsel's trial strategy. Before granting relief on a claim that defense counsel failed to do something, we ordinarily require that counsel be afforded the opportunity to outline the reasons for the omission. *Roberts,* 220 S.W.3d at 533. Because trial counsel merely commented on his omission in hindsight, and not on the trial strategy itself, we cannot conclude that the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392.

Trial testimony established that L.A. slept in bunk beds only part of the time she stayed with Elena. Thus, counsel's failure to call a witness who would testify that she had not seen bunk beds when she visited Elena's house on a prior occasion does not constitute "outrageous" conduct. *See id.* Moreover, it does not seem "outrageous" that counsel avoided eliciting testimony that Satterlee is afflicted by both genital warts and staph infections that caused him to develop lesions around his waist and groin. None of

the "most relevant questions" are decisive and the omissions may be attributed to trial strategy. Therefore, we must defer to the presumption that counsel's actions fell within the scope of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216S.W.3d at 851.

Moreover, trial counsel's assertion that he "expected we would win" does not constitute ineffective assistance of counsel. Unlike other successful ineffective assistance of counsel claims that center on plea bargains, counsel informed Satterlee of the offer in a timely manner*. See Paz v. State*, 28 S.W.3d 674, 676 (Tex. App.–Corpus Christi 2000, no pet.). Trial counsel conveyed the proposed plea bargain agreement, and he fulfilled his "duty to render his best judgment about his client about what plea to enter, and his judgment . . . [was] informed by adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 283 S.W.3d 492, 500 (Tex. Crim. App. 2009). Satterlee was given the final opportunity to accept or reject the plea agreement. Counsel gave honest professional advice, albeit ultimately incorrect. The present facts do not support an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. Satterlee's second issue is overruled.

### IV. CONCLUSION

Having overruled all of Satterlee's issues on appeal, we affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
29th day of July, 2010.

11