NUMBER 13-09-00325-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

CHARLES A. SATTERLEE, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 36th District Court

of Aransas County, Texas.

 


 MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Yañez and Garza


 Memorandum Opinion by Chief Justice Valdez
 

 After a jury trial, appellant, Charles A. Satterlee, was convicted of indecency with
a child, a second-degree felony. See Tex. Penal Code Ann. § 21.11(a)(1), (d) (Vernon
Supp. 2009). Satterlee was sentenced to ten years' confinement in the Institutional
Division of the Texas Department of Criminal Justice. By four issues, which we
characterize as two, Satterlee contends that: (1) the trial court erred by allowing the State
to present hearsay testimony; and (2) he received ineffective assistance of counsel. We
affirm.

I. Background

 On May 27, 2008, Satterlee was indicted on two counts of indecency with a child
after an outcry was made by a twelve-year-old, L.A. (1) Prior to trial, the State abandoned
the second count and proceeded to trial only on the first. Trial commenced on April 7,
2009. 

A. The State's Evidence

 L.A.'s grandmother, Elena, testified that she dated Satterlee between 2000 and
2007. In 2002, Elena, Satterlee, and Elena's son, Andrew, moved into a home in
Rockport, Texas. L.A. and her mother, Rachel, moved into the home in October 2005. 
Elena testified that, on one occasion, she witnessed Satterlee grab L.A.'s breasts, pull her
close, lick her face, and grab her buttocks. 

 L.A.'s mother, Rachel, testified that she and L.A. lived with Elena and Satterlee
between October 2005 and November 2006. Upon moving into the home, Rachel and L.A.
slept in a living room that had been converted into a bedroom. Later, Rachel and L.A. slept
on bunk beds in a bedroom adjacent to Elena and Satterlee's. Rachel testified that on one
occasion, Rachel saw Satterlee pull L.A. towards him and pinch her nipple. Soon after,
Rachel and L.A. moved out of Elena's house, and Elena and Satterlee separated. After
moving out, Rachel talked to L.A. about the incident she witnessed with Satterlee, and L.A.
revealed to Rachel that Satterlee had touched her "private parts" on another occasion.
Rachel contacted the police who arranged an examination for L.A. by Sexual Assault
Nurse Examiner ("SANE") Carol McLaughlin.

 L.A. testified that she and her mother resided with Elena and Satterlee. L.A.
recalled that, when she was around eleven years old, Satterlee would come to her room
and watch her sleep. L.A. testified that on one occasion, Satterlee came to her room and
touched her vaginal area with his hand. According to L.A., Satterlee rubbed his penis
against her vaginal area but never "went inside her." L.A. stated that Satterlee's penis was
"hard" and that she felt "sore" after the contact. L.A. also stated that she was "afraid" of
Satterlee because he threatened to injure her family and friends if she told anyone about
what he did. 

 McLaughlin testified that she isolated L.A. in an exam room and took a medical
history "in order to know how to treat her properly." McLaughlin stated that L.A. told her
that "Charles, Chuck he had sex with me. He grabbed stuff, like privates. He put his
private to mine and rubbed it there. It was hard. He was grabbing my boobs." According
to McLaughlin, L.A. also stated that Satterlee grabbed her "crotch" and "butt" and would
make L.A. "touch his private part all over." McLaughlin testified that L.A. told her that these
events took place between fourth and fifth grade. 

 McLaughlin also performed a full body examination, including a magnified external
examination of L.A.'s genital area. No physical injuries or genital trauma were found. 
McLaughlin testified that the lack of physical evidence is "the norm." According to
McLaughlin, "eighty percent" of her cases show no sign of injury. 

B. Satterlee's Evidence

 Satterlee testified that he was never alone with nor had any type of sexual contact
with L.A. He accused Elena of wanting to "get back" at him. When asked why Elena would
want to get back at him, Satterlee referred to an email that he said talked about hate;
Satterlee did not elaborate. 

 Pamela Toledo, a friend of both Satterlee and Elena, testified that she had visited
Elena's home many times and never witnessed Satterlee mistreat L.A. or behave in a
violent manner. However, Toledo stated that she had witnessed L.A. "mistreat" Satterlee,
but offered no explanation of the alleged mistreatment. Toledo also testified that the day
after Satterlee left, Elena told her that "she was going to get vengeance for [Satterlee]
leaving her on [sic] the drop of a hat." 

 At the conclusion of the trial, the jury found Satterlee guilty of indecency with a child
and sentenced him to ten years' imprisonment. See id. Satterlee timely filed a motion for
new trial. After holding a hearing, the trial court denied Satterlee's motion for new trial. 
This appeal ensued. 

II. Hearsay Rule

 In his first issue, Satterlee argues that the trial court erred in admitting inadmissible
hearsay from McLaughlin into evidence. 

A. Standard of Review and Applicable Law


 A trial court's decision to admit or exclude evidence is reviewed under an abuse of
discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). A trial
court abuses its discretion when its determination of evidentiary admissibility falls outside
the zone of reasonable disagreement. McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim.
App. 2008).

 "Hearsay is a statement, other than one made by the declarant while testifying at
trial or hearing, offered into evidence to provide the truth of the matter asserted." Tex. R.
Evid. 801(d). A statement made for purposes of medical diagnosis or treatment in which
the patient describes medical history related to past or present symptoms and the cause
or source thereof, if reasonably pertinent to diagnosis or treatment, is an exception to the
hearsay rule. Id. at R. 803(4). This hearsay exception is based on the idea that a patient
understands the importance of being truthful with medical personnel in order to receive an
accurate diagnosis and treatment. See Fleming v. State, 819 S.W.2d 237, 247 (Tex.
App.-Austin 1991, pet. ref'd).

B. Analysis

 The State introduced McLaughlin's notes from her examination of L.A. through her
testimony. McLaughlin read to the jury statements made by L.A. about the abuse.
Satterlee argues that L.A.'s statements to McLaughlin should be excluded as hearsay
because they are not subject to Texas Rule of Evidence 803(4). See Tex. R. Evid. 803(4). 
Satterlee contends that L.A.'s statements to McLaughlin were not for the purpose of
medical diagnosis because McLaughlin did not "diagnos[e] the child or treat her for
anything. Satterlee also argues that L.A. was not explicitly informed about the importance
of her truthfulness because McLaughlin did not preface L.A.'s medical history by warning
her of the importance of what she said. 

 The purpose of rule 803(4) is to allow in evidence that is highly credible. See id. 
L.A.'s statements given for medical diagnosis or treatment are likely to be true due to a
patient's self-interest in her health. See id. Texas courts have held that a trial court does
not abuse its discretion by admitting statements made during a SANE examination. See
Green v. State, 191 S.W.3d 888, 896 (Tex. App.-Houston [14th Dist] 2006, pet. ref'd); 
see also Little v. State, No. 04-08-00723-CR, 2009 Tex. App. LEXIS 7091, at **3-6 (Tex.
App.-San Antonio Sept. 9, 2009, no pet.) (mem. op., not designated for publication).

 The record shows that L.A. met with McLaughlin alone, isolated from anyone who
could influence her responses. McLaughlin testified that the examination was conducted
in four stages, only the last of which was intended to collect evidence for police. 
McLaughlin also stated that in her experience, which encompasses approximately 3,000
sexual assault examinations, she has found that medical histories are relevant to medical
diagnosis and treatment of the victim. McLaughlin explained, "I need to know what
happened for diagnosis and treatment, I need to know where to look; if they need any
medications, if lab work needs to be done, so I have to know what happened." Therefore,
the medical history is at a minimum reasonably pertinent to diagnosis or treatment, and
hence admissible under Texas Rule of Evidence 803(4). See Tex. R. Evid. 803(4); see
also Fleming, 819 S.W.2d at 247.

 To determine whether a child understands the importance of telling the truth, we
look to the entire record. See Green, 191 S.W.3d at 896. Although no specific inquiry was
made to determine whether L.A. appreciated the need to be truthful in her statements to
McLaughlin, the record is sufficient to support such a conclusion. See Fleming, 819
S.W.2d at 247. L.A. made her statements in a hospital, alone, and received a full-body
examination consistent with the medical history she gave. L.A. was twelve years old at the
time of her examination. Further, the manner in which L.A. described Satterlee's conduct
was, according to McLaughlin's sizable experience, discernable and consistent with
descriptions provided by other victims her age. Finally, L.A.'s own health and welfare was
an incentive to be thorough and honest with McLaughlin. 

 L.A. was taken to Driscoll Children's Hospital because she made an outcry
regarding possible sexual abuse. McLaughlin's primary goal is to ensure the safety of her
patients. To that end, it is reasonable for McLaughlin to ask what happened in order to
know where the harm occurred and what type of tests she may be required to run. Also,
it is relevant for her to know who the perpetrator is in order to treat any latent sexually
transmitted diseases the perpetrator might have and to prevent the victim from returning
to an abusive home. While there was no apparent injury or any issue to diagnose, the
medical history was still necessary to conclude that no diagnosis was needed. 

 With these considerations, and after reviewing the entire record, we conclude that
the evidence is sufficient to support a finding that the medical history taken by McLaughlin
was given for the purpose of medical diagnosis and treatment, and L.A., who was twelve
at the time of the examination, understood the need to be truthful. Accordingly, we
conclude McLaughlin's testimony comes under the hearsay exception in Texas Rule of
Evidence 803(4). See Tex. R. Evid. 803(4); see also Fleming, 819 S.W.2d at 247. 
Therefore, we hold the trial court did not abuse its discretion in admitting the evidence. 
See Burden, 55 S.W.3d at 615; see also McCarty, 257 S.W.3d at 239.

III. Ineffective Assistance of Counsel

 In his second issue, Satterlee contends that his trial counsel rendered ineffective
assistance by: (1) failing to object to McLaughlin's testimony; (2) failing to "ask the most
relevant questions"; and (3) convincing Satterlee to refuse a plea bargain which would have
granted him community supervision instead of the prison term he received. 

A. Standard of Review and Applicable Law

 To establish ineffective assistance of counsel, Satterlee must show that: (1) his
attorney's representation fell below an objective standard of reasonableness; and (2) there
is a reasonable probability that, but for his attorney's errors, the result of the proceeding
would have been different. See Strickland v. Washington, 466 U.S. 668, 684 (1984);
Dewberry v. State, 4 S.W.3d 735, 757 (Tex. Crim. App. 1999); Jaynes v. State, 216
S.W.3d 839, 851 (Tex. App.-Corpus Christi 2006, no pet.). Whether this test has been
satisfied is to be judged on appeal by the totality of representation, not by any isolated acts
or omissions. Jaynes, 216 S.W.3d at 851. Satterlee has the burden to prove ineffective
assistance of counsel by a preponderance of the evidence. Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999) (citing Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim.
App. 1984)).

 Our review of counsel's representation is highly deferential, and we will find
ineffective assistance only if the appellant overcomes the strong presumption that his
counsel's conduct fell within the wide range of reasonable professional assistance. See
Strickland, 466 U.S. at 689; Jaynes, 216 S.W.3d at 851. The right to "reasonably effective
assistance of counsel" does not guarantee errorless counsel whose competency is judged
by perfect hindsight. Saylor v. State, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983).
Moreover, the acts or omissions that form the basis of appellant's claim of ineffective
assistance must be supported by the record. Thompson, 9 S.W.3d at 814; Jaynes, 216
S.W.3d at 851. A silent record which provides no explanation for counsel's actions usually will not
overcome the strong presumption of reasonable assistance. Thompson, 9 S.W.3d at 813-14. To warrant reversal without affording counsel an opportunity to explain his actions, the
conduct must be "so outrageous that no competent attorney would have engaged in it." 
Roberts v. State, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

B. Analysis

 Satterlee contends that trial counsel provided ineffective assistance by failing to
object to McLaughlin's testimony regarding the statements L.A. made to her during the
SANE examination. As previously discussed, McLaughlin's testimony was properly
admitted because it related to a statement made for medical diagnosis or treatment. See
Tex. R. Evid. 803(4). Thus, trial counsel's failure to pursue the objection did not fall below
an objective standard of reasonableness. See Strickland, 466 U.S. at 684; Dewberry, 4
S.W.3d at 757. Satterlee also contends that trial counsel rendered ineffective assistance
by failing to "ask the most relevant questions." Specifically, Satterlee asserts, inter alia,
that trial counsel failed to present evidence that L.A. did not sleep in a bunk bed, or elicit
testimony regarding Satterlee's alleged skin "lesions" and sexually transmitted diseases. 
 Trial counsel testified at the hearing on Satterlee's motion for new trial; however, counsel
only addressed the issue of Satterlee's sexually transmitted skin lesions. Although
Satterlee did not provide counsel with any "actual proof" that he had a condition that
resulted in lesions, counsel expressed "regret" for not asking L.A. during cross-examination
to "describe [Satterlee's] body," a description that possibly could have been used to refute
L.A.'s credibility. 

 When trial counsel's reasons for failing to object do not appear in the record, we
presume trial strategy. See Ortiz v. State, 93 S.W.3d 79, 95 (Tex. Crim. App. 2002). 
Notwithstanding counsel's remarks, the record is devoid of evidence of counsel's trial
strategy. Before granting relief on a claim that defense counsel failed to do something, we
ordinarily require that counsel be afforded the opportunity to outline the reasons for the
omission. Roberts, 220 S.W.3d at 533. Because trial counsel merely commented on his
omission in hindsight, and not on the trial strategy itself, we cannot conclude that the
conduct was "so outrageous that no competent attorney would have engaged in it." 
Goodspeed, 187 S.W.3d at 392. 

 Trial testimony established that L.A. slept in bunk beds only part of the time she
stayed with Elena. Thus, counsel's failure to call a witness who would testify that she had
not seen bunk beds when she visited Elena's house on a prior occasion does not
constitute "outrageous" conduct. See id. Moreover, it does not seem "outrageous" that
counsel avoided eliciting testimony that Satterlee is afflicted by both genital warts and
staph infections that caused him to develop lesions around his waist and groin. None of
the "most relevant questions" are decisive and the omissions may be attributed to trial
strategy. Therefore, we must defer to the presumption that counsel's actions fell within the
scope of reasonable professional assistance. See Strickland, 466 U.S. at 689; Jaynes,
216S.W.3d at 851. 

 Moreover, trial counsel's assertion that he "expected we would win" does not
constitute ineffective assistance of counsel. Unlike other successful ineffective assistance
of counsel claims that center on plea bargains, counsel informed Satterlee of the offer in
a timely manner. See Paz v. State, 28 S.W.3d 674, 676 (Tex. App.-Corpus Christi 2000,
no pet.). Trial counsel conveyed the proposed plea bargain agreement, and he fulfilled his
"duty to render his best judgment about his client about what plea to enter, and his
judgment . . . [was] informed by adequate and independent investigation of the facts of the
case." Ex parte Reedy, 283 S.W.3d 492, 500 (Tex. Crim. App. 2009). Satterlee was given
the final opportunity to accept or reject the plea agreement. Counsel gave honest
professional advice, albeit ultimately incorrect. The present facts do not support an
ineffective assistance of counsel claim. See Strickland, 466 U.S. at 689; Jaynes, 216
S.W.3d at 851. Satterlee's second issue is overruled. 

IV. Conclusion

 Having overruled all of Satterlee's issues on appeal, we affirm the trial court's
judgment.

 ________________________

 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the 

29th day of July, 2010. 
1. To protect the child's privacy, we refer to the child by her initials and to her relatives by pseudonym. 
See Tex. R. App. P. 9.8.