In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00409-CR**
**NO. 09-13-00410-CR**

_____

**BRANDON CHADWICK COE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-11-12628 CR (Count 1 and Count 2)**

## MEMORANDUM OPINION

Brandon Chadwick Coe appeals his convictions for online solicitation of a minor and attempted sexual assault of a child. *See* Tex. Penal Code Ann. §§ 15.01, 33.021(c) (West 2011). He raises three issues on appeal.[1] We affirm the trial court's judgment.

_____

[1]We note that Coe's issues are multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (explaining that a multifarious issue is one that embraces more than one legal theory). By combining more than one contention in

# I. Background

A grand jury returned a two-count indictment against Coe charging him with online solicitation of a minor (Count I) and criminal attempt (Count II). *See id*. §§ 15.01, 33.021. Coe pled not guilty to both offenses. A jury found Coe guilty as charged in both counts, and assessed punishment in Count I at imprisonment for twelve years and a $10,000 fine, and assessed punishment in Count II at imprisonment for ten years and a $10,000 fine. The trial court entered judgment in accordance with the jury's verdicts. Coe timely appealed the trial court's judgments.[2]

## II. Constitutionality of Section 33.021

In his first issue, Coe complains that Count I of the indictment is unconstitutional. Coe contends that in Count I, he was indicted for third-degree

---

a single point of error, Coe risks denial on the ground that the issue is multifarious and presents nothing for review. *See Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Sparkman v. State*, 55 S.W.3d 625, 630-31 (Tex. App.—Tyler 2000, no pet.). In the interest of justice, we will consider multifarious issues to the extent we are able to identify Coe's complaints with reasonable certainty and those complaints are adequately briefed. *See Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd); *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

[2]Both Coe and the State consolidated Cause No. 09-13-00409-CR and Cause No. 09-13-00410-CR for briefing purposes. Because the briefs and arguments raised in both causes are identical, they may be considered in one opinion.

felony online solicitation of a minor. According to Coe, because section 33.021(c) is not punishable as a third-degree felony offense, we must infer that the State's intent was to indict Coe under section 33.021(b), which the Texas Court of Criminal Appeals deemed unconstitutional in *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).[3]

Texas Penal Code section 33.021(c) provides that a person commits an offense under this section:

> if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Penal Code Ann. § 33.021(c). An offense under subsection (c) is a second-degree felony. *Id*. § 33.021(f). The indictment alleged that Coe "did then and there, with the intent that E.B., a minor, would engage in sexual contact and sexual intercourse with the defendant knowingly solicit over the [I]nternet and through a commercial online service (Facebook) the said E.B. to meet the defendant[.]" As Coe notes, the caption of the indictment classified Coe's offense as a third-degree

---

[3]In *Ex parte Lo*, the Texas Court of Criminal Appeals held Section 33.021(b) of the Texas Penal Code was unconstitutionally "overbroad because it prohibits a wide array of constitutionally protected speech and is not narrowly drawn to achieve only the legitimate objective of protecting children from sexual abuse." 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

felony. However, the caption of an indictment is not part of the charging instrument. *Adams v. State*, 222 S.W.3d 37, 52-53 (Tex. App.—Austin 2005, pet. ref'd); *Gonzalez v. State*, 664 S.W.2d 797, 799 (Tex. App.—Corpus Christi 1984), *rev'd on other grounds*, No. 263-84 (Tex. Crim. App. July 18, 1984) (not designated for publication). Here, because the body of the indictment alleges an offense under subsection (c) of section 33.021 and not an offense under subsection (b), the fact that the caption references a third-degree felony is of no consequence. We overrule Coe's first issue to the extent he alleges Count I of the indictment was unconstitutional because he was indicted under section 33.021(b), which has been found to be unconstitutional.

Coe argues in the alternative that section 33.021(c) is also an unconstitutional infringement of his First Amendment right to free speech, specifically, his right to fantasy speech. According to Coe, his words were protected by the First Amendment because his words were not directed to producing imminent lawless action and were not solicitation. He contends that when section 33.021(c) and (d) are combined, they explicitly criminalize fantasy speech, which he argues is protected by the First Amendment. The State responds that Coe did not challenge the constitutionality of section 33.021(c) on those grounds at trial and, thus, has not preserved this issue for review.

4

Constitutional challenges to a statute are generally forfeited by failure to object at trial. *Curry v. State*, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995); *see also Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). A party must challenge the constitutionality of a statute as applied in the trial court to preserve error. *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008); *Curry*, 910 S.W.2d at 496. Likewise, a party may not raise for the first time on appeal a facial challenge to the constitutionality of a statute. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). The objection made in the trial court must comport with the argument presented on appeal. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). In determining whether a complaint on appeal comports with that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339.

Coe relies on *Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014) (per curiam), for the proposition that he may raise a facial challenge to the constitutionality of a statute for the first time on appeal. However, as Justice Cochran's concurrence explained in *Ex Parte Chance*, the party in *Chance* had requested relief for a conviction under a statute the court had previously declared unconstitutional. *Id*. at 918, 922 (Cochran, J., concurring). Justice Cochran

5

distinguished that scenario from a situation in which a party is challenging a valid statute, or a statute that had not been declared void. *Id*. at 922 (Cochran, J., concurring). Neither subsection (c) or (d) of section 33.021 has been declared unconstitutional. Because Coe has challenged only valid sections of the statute, his reliance on *Ex parte Chance* for the proposition he need not raise his challenge in the trial court is misplaced.

Having determined that Coe was required to first raise his challenge in the trial court to preserve it for appellate review, we next determine whether he made an objection at trial that comports with the issue being asserted on appeal. During Coe's motion for directed verdict, Coe objected that section 33.021 is unconstitutional because it fails to give fair notice and it is impermissibly vague. The trial court overruled Coe's motion for directed verdict and overruled Coe's objections to the constitutionality of the statute. Coe filed a motion for new trial and motion in arrest of judgment, arguing only that the verdict is contrary to the law and evidence under Texas Rule of Appellate Procedure 21.3. Coe's motion for new trial did not argue the constitutionality of section 33.021. Coe's motion for new trial and motion in arrest of judgment were overruled by operation of law.

Coe's objection at trial that the statute does not provide fair notice and is impermissibly vague does not comport with his argument on appeal that the statute

6

violates his First Amendment right to free speech. We conclude Coe has not properly preserved his challenge to the constitutionality of section 33.021(c) for review in this appeal. Even if such argument had been preserved, this Court and others have analyzed and rejected the constitutional challenge Coe attempts to raise, and we see nothing in this record or Coe's argument that would compel us not to follow that precedent in this case. *See Ex parte Zavala*, 421 S.W.3d 227, 231-32 (Tex. App.—San Antonio 2013, pet. ref'd); *Maloney v. State*, 294 S.W.3d 613, 625-29 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Ex parte Victorick*, No. 09-13-00551-CR, 2014 WL 2152129, at *1-6 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication). We overrule Coe's first issue.

### III. Sufficiency of the Evidence

In his second issue, Coe contends the evidence is factually insufficient to support his conviction for online solicitation of a minor and attempted sexual assault of a child.

### A. Standard of Review

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove

7

beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319). We give full deference to the jury's responsibility to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we presume the jury resolved such conflicts in favor of the verdict and defer to that resolution. *Thomas*, 444 S.W.3d at 8. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

8

**B. Online Solicitation of a Minor**

Coe asserts that there is no evidence that he engaged in sexually explicit communications with E.B.'s sister while E.B.'s sister was posing as E.B., a minor, on Facebook. He maintains that because the indictment did not charge him with communicating with E.B. through text messages or over G-chat,[4] to affirm his conviction we must find that his Facebook communications alone were sexually explicit. Alternatively, he argues that if we conclude the indictment extended to the G-chat communications, the State also had the burden to show those communications were sexually explicit.

At the outset, we note the majority of Coe's sufficiency argument is based on his contention that he was indicted under subpart (b) of Section 33.021. However, as we discussed above, the indictment clearly charges Coe with a violation of subpart (c) of the statute. In reviewing the plain language of subpart (c), we note that it does not require "sexually explicit communications." *See* Tex. Penal Code Ann. § 33.021(c). Rather, it requires a person to solicit a minor "over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service[.]" *Id.* As we explained in *Ex*

---

[4]To the extent Coe attempts to argue in his brief to this Court that the trial court erred in admitting records of the conversations that took place over G-chat, we do not address such argument as Coe has not adequately supported the issue with record references or case citations. *See* Tex. R. App. P. 38.1(i).

9

*parte Victorick*, "'[s]olicit' is not defined in section 33.021 of the Texas Penal Code, and can be understood by the jury by its commonly defined terms, which include, 'to approach with a request or plea' and 'to endeavor to obtain by asking or pleading[.]'" 453 S.W.3d 5, 15 (Tex. App.—Beaumont 2014, pet. ref'd) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (2002)).

The indictment alleged that Coe knowingly solicited E.B. "over the [I]nternet and through a commercial online service (Facebook)[.]" Despite Coe's argument to the contrary, alleging in the conjunctive that Coe solicited E.B. "over the [I]nternet" and "through a commercial online service (Facebook)" does not require the State to prove that Coe did both. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding that "although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive"). Therefore, the evidence is sufficient to support the jury's verdict that Coe was guilty of online solicitation of a minor if the jury could have found beyond a reasonable doubt that Coe knowingly solicited E.B., a minor, over the Internet to meet with him or another person with the intent that E.B. would engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him or another person. *See id.*; *see also* Tex. Penal Code Ann. § 33.021(c).

10

E.B. was sixteen years of age on the date of the alleged offenses. She testified that she knew Coe and his family. She grew up around the Coe family and on occasion had lunch with them. In 2011, Coe and his father helped E.B. and her mom move into a new apartment. She testified that Coe made her feel uncomfortable and awkward during the move because of how Coe would look at her.

E.B. testified that she had been "friends" with Coe on Facebook for some time and had become "friends" well before August 2011. Coe made her feel awkward when he placed a comment that she "looked cute" on one of the pictures she posted of herself on Facebook. She told her sister about the comment, so E.B.'s sister started checking E.B.'s Facebook page.

The testimony offered by E.B.'s sister corroborated E.B.'s testimony. E.B.'s sister testified she became concerned for her younger sister, E.B., then sixteen years of age, when she noticed that Coe, a thirty-five-year-old man, was showing an "abnormal" or "excessive" level of interest in E.B.'s pictures on Facebook. The State admitted into evidence a Facebook chat log that E.B.'s sister identified as a conversation that she, under the persona of E.B., conducted with Coe. E.B.'s sister testified that she sent out a group message from E.B.'s Facebook account to Coe and eight other people. The message stated, "'So I am sending a message to all my

11

friends. What is it you-all like and don't like about me? How do we know each other? Do we have any secrets?'" Coe responded to the message within minutes. E.B.'s sister described the initial conversation between Coe and herself and then testified that Coe sent a message to E.B. asking, "'What are you up to, cutie?'"

The following day, E.B.'s sister sent a text message to the cell phone number Coe had provided to her during the Facebook chat. Photographs of the text conversation were admitted into evidence. Coe asked E.B. to send him a picture of herself, so E.B.'s sister sent him a picture of E.B. E.B.'s sister testified in detail regarding the content of the text messages exchanged between herself, posing as E.B., and Coe. She exchanged various photographs with Coe throughout the conversation. After she sent one certain photograph that she represented was E.B. lying next to a swimming pool, Coe responded that he would "like to see everything[.]" Coe also sent E.B. a text message that he would "love to be [her] first[.]"

The photographs of the text messages reflect that Coe offered to send E.B. a picture of his sexual organs, but that E.B. would have to send him pictures of her first because he had "a lot more at stake[.]" The evidence also reflects that Coe warned E.B. that she would need to delete any photographs he sent her because he could get in "big trouble[.]" E.B.'s sister testified that she sent Coe two

12

photographs of random nude females she found on the Internet and told Coe they were pictures of E.B. E.B.'s sister testified that Coe responded that he liked what he saw in the photographs. Coe responded by sending a photograph of his sexual organ. According to E.B.'s sister, Coe then described in graphic detail what he wanted to do sexually.

Coe later sent a text message indicating that he discovered the legal age of consent in Texas was seventeen years and told her that it was not illegal for them to be together after all. E.B.'s sister testified that up until that point in time, they had not discussed E.B.'s actual age. Coe sent a text message that he was ready to get together with E.B. whenever she was ready and that he looked forward to seeing her soon.

E.B.'s sister testified that Coe sent another text to E.B. wanting E.B. to come over to his house. During the conversation, she informed Coe that E.B. was just sixteen years old. Coe responded that he could get in "real big trouble and go to jail" if they did anything before E.B. turned seventeen years old.

Posing as E.B. again, her sister exchanged chats with Coe on Facebook . Coe sent E.B. a message through Facebook to tell her that she could call or text him if she wanted. Coe ended the conversation by stating that he could not wait to hear E.B.'s voice and see her in person. Copies of these exchanges were admitted

13

before the jury. E.B.'s sister testified that she also had conversations with Coe through Google email and chat. Copies of such exchanges were admitted before the jury. From all of her exchanges with Coe, E.B.'s sister became concerned for E.B's safety and decided to contact law enforcement.

E.B.'s sister testified that she had known Coe and his family for over fifteen years and their families had been friends and attended church together. She had also known Coe's ex-wife for many years and used her as a babysitter. E.B.'s sister testified that when the conversations with Coe began, she spoke with Coe's ex-wife concerning the conversations. She denied that she and Coe's ex-wife made any plan to set up Coe. On cross-examination, E.B.'s sister stated that Coe's ex-wife did make a comment to her about Coe which caused her to be concerned about Coe's apparent interest in E.B.

E.B.'s sister agreed on cross-examination that she is adept at photography but denied tampering with any of the photographs of the chat conversations entered into evidence. Defense counsel also questioned E.B.'s sister about thirty-nine missing images mentioned in the forensic report of the text messages between her and Coe captured on E.B.'s sister's phone. It was explained that those images were personal pictures of her and her son and were not images of her conversations with Coe.

Chris Smith, chief investigator with the Montgomery County District Attorney's Office, testified he received a report from the F.B.I. regarding an adult's on-line communication with a minor. He testified that E.B.'s sister made a complaint to the F.B.I. about online communications involving E.B. After meeting with E.B.'s sister, he made a plan to take over the identity of the minor child, E.B., and continue the online communications. E.B.'s mother provided Smith with permission to access E.B.'s Facebook and Gmail accounts.

Smith testified that he began accessing E.B.'s Gmail account on October 14. He identified a series of emails between him, posing as E.B., and Coe. Smith testified and the evidence reflects that Smith sent Coe an email from E.B.'s Gmail account and Coe responded and provided his cell phone number and requested her to contact him by texting. Smith confirmed that the number Coe provided in the email was actually Coe's cell phone number. Smith captured parts of the on-line chat conversations and emails exchanged with Coe, and the printouts of those exchanges were admitted into evidence for the jury to consider. Based on Smith's investigation and having reviewed the prior messages between Coe and E.B., it was Smith's opinion that Coe continued to solicit the minor for sexual relations.

Coe asked where E.B.'s sister lived so that he could obtain a map to her house. Coe confirmed again that E.B. would be alone at her sister's house that

15

night. Coe then asked E.B. when she would have her next birthday. Coe confirmed that E.B. was still sixteen and would turn seventeen years old the following Wednesday. Coe continued his on-line sexual banter. The conversation continued:

> Brandon: … so when would you want me to come oveR?
> ….
> Brandon: …That wouldn't be what it is to me I think you would be really cool to be your first
> me: does this mean I have a date for tonight? really feeling sick right this second (lol)…
> Brandon: Lol If you want one
> me: u r kind of making me feel like u dont want to have sex with me. if u don't, just tell me…I feel like u r playing games with me.
> ….
> Brandon: I wanna be with you if you want
> ….
> me: if u don't want to, I understand.
> Brandon: I do
> me: so r u coming tonight?
> Brandon: If you still want me to.

Smith testified that the conversation ended about 3:37 p.m. At this point, Smith started setting up a location to meet Coe. Smith testified that, posing as E.B., he initiated further communication with Coe later that night at 7:13 p.m. Smith testified that he sent Coe the address of the location they had prepared for Coe. Coe confirmed that E.B. was alone at the address. Smith testified that he exchanged various messages with Coe throughout the night. Smith also testified that Coe attempted to call the house at the address Smith had given him. When no one answered, Coe became suspicious that his ex-wife was attempting to set him

16

up and pose as E.B. to cause him trouble. Smith was able to convince Coe to keep the rendezvous that night. Again, the jury was able to view the transcript of the verbal exchanges with Coe.

Coe continued to try to arrange to speak to E.B. on the telephone before arriving at the address. Coe confirmed whether E.B. still wanted to see him and confirmed directions to E.B.'s sister's house. Posing as E.B., Smith expressed concern that Coe would be disappointed because she did not know what she was doing. Coe responded, "Sweet that's part of it's being your first. You really don't have to worry about anything[.]" Coe confirmed that he was on his way and asked E.B. what she was wearing and if she would come outside to greet him.

At 12:04 a.m., Coe sent a message indicating he had arrived at the house. Smith testified that a vehicle pulled up to the location and Coe exited the vehicle and began walking towards the house. Smith testified that he exited the house and made contact with Coe and placed Coe under arrest. Smith testified that when they arrested Coe, he was in possession of a cell phone, wallet, car keys, and five condoms. Smith testified that when they made an inventory of Coe's vehicle, they located an additional condom and a prescription bottle of Cialis. Smith testified that the bottle of Cialis was prescribed to Coe.

Defense counsel questioned Smith at length regarding the practices he used in his investigation and criticized him for not subpoenaing the entirety of the conversations from the on-line providers. Smith admitted that if someone has the motive, knowledge, and intent, it was possible for that person to make an innocent person appear guilty of an offense. He also agreed that photographs of Facebook and online chats could be altered. He conceded that while he is able to subpoena records from Internet service providers and phone companies, he did not subpoena chat or email records from Google concerning Coe's activities. Smith testified there were other complaints against Coe specifically regarding the misuse of his position at the church to spy on teenage female members of the church.

Coe's ex-wife testified that in June 2011, she turned over several computer hard drives to the Montgomery County police department that she had obtained from her and Coe's home. She told law enforcement that she suspected they contained pornographic images. However, it was her understanding that the hard drives revealed "nothing of any kind of evidentiary nature[.]"

Chris Juneau, an elder in the church Coe attended, was called to testify on behalf of Coe. Juneau is also E.B.'s uncle. He testified that no one from the church had complained to him about Coe's behavior. When E.B.'s sister spoke to him about Coe's actions, he took the matter before the elder board of the church, and

18

they watched Coe more closely. He testified that he never observed any inappropriate behavior between Coe and E.B. at church and E.B. had never complained directly to him about Coe. He was certain that if Coe had behaved inappropriately at church, he would have been aware of it.

The jury was allowed to view the explicit details of the content of the on-line conversations between Coe and the person he believed to be an under-aged teen, as was this Court in our review. There was ample evidence from which a jury could reasonably infer that Coe solicited E.B. and arrived at the designated meeting place with the intent that she would engage in sexual contact. When viewing the evidence in a light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Coe, through the Internet, knowingly solicited E.B., a sixteen-year-old child, to meet him with the intent that she would engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him. *See* Tex. Penal Code Ann. § 33.021(c).

## C. Attempted Sexual Assault of a Child

Coe also challenges the sufficiency of the evidence supporting his conviction for attempted sexual assault of a minor. Specifically, Coe contends the State did not prove he traveled to the residence with the intent to commit a crime.

19

A person commits the offense of attempted sexual assault of a child if, with the specific intent to sexually assault a child, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the intended offense. *See* Tex. Penal Code Ann. §§ 15.01(a), 22.011(a)(2). The indictment alleged that Coe "travel[ed] to a predetermined location with the intent to engage in sexual intercourse with E.B., amounting to more than mere preparation that tended to but failed to effect the commission of said offense[.]"

In this case, the State produced transcripts of numerous online conversations that Coe had with E.B., a person whom Coe believed was a sixteen-year-old girl. The conversations that Coe had over Gmail chat and through text messaging were undisputedly of an explicit sexual nature. Also admitted into evidence was a photograph that Coe sent to E.B. revealing his sexual organ. From the content of the conversations and photographs, the jury could reasonably infer that Coe had the specific intent to engage in sexual intercourse with the child whom he believed to be E.B.

Coe arrived at the agreed-upon location. Officers found five condoms in Coe's front pocket and a bottle of Cialis in his vehicle. When considering these items in the context of the other evidence in the case, the jury could reasonably infer that this act was further evidence of Coe's intent to engage in sexual

20

intercourse with someone whom he believed to be a sixteen-year-old child. *See Hall v. State*, 124 S.W.3d 246, 252 (Tex. App.—San Antonio 2003, pet. ref'd). When viewing the evidence in the light most favorable to the verdict, we conclude that the State proved beyond a reasonable doubt that Coe had the specific intent to commit the offense of sexual assault of a child, and that he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. We overrule Coe's challenge to the sufficiency of the evidence to support his conviction for attempted sexual assault of a child.

## IV. Evidentiary Issues

Coe asserts that certain evidentiary rulings made by the trial court during the trial resulted in the rendition of an improper verdict. We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We will not reverse the trial court's decision if it is within the zone of reasonable disagreement. *Id*. We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### A. Admissibility of the Testimony of Coe's Ex-Wife

In his second issue, Coe contends the trial court erred in limiting defense counsel's cross-examination of Coe's ex-wife regarding Coe's allegation that his

ex-wife had set him up.[5] Coe was prohibited from questioning his ex-wife regarding a previous attempt by her to lure Coe into an on-line conversation while posing as an under-aged female. Assuming, without deciding, that the trial court erred in restricting Coe's examination of his ex-wife, we determine any error was harmless.

The erroneous admission or exclusion of evidence is generally reviewed under the standard for nonconstitutional error contained in Rule 44.2(b) of the Texas Rules of Appellate Procedure if the trial court's ruling merely offends the rules of evidence. *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). The erroneous exclusion of evidence can rise to the level of constitutional error when the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). The exclusion of testimony that could only "'incrementally'" further the defendant's theory is not constitutional error; however, the exclusion of testimony that "'goes to the heart of

---

[5]In the point heading of Coe's third issue, he argues the trial court erred when it "refused defense requests for affirmative defenses in the jury charge, over defense objection." However, we note the body of Coe's third issue does not coincide with the argument raised in his point heading. We only address the issues presented and adequately briefed in the body of Coe's appellate brief.

the defense'" is constitutional error. *Wilson v. State*, 451 S.W.3d 880, 886-87 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) and *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002)).

Through the cross-examination of E.B.'s sister, Coe was able to present his argument that E.B.'s sister and Coe's ex-wife had a close relationship and that E.B.'s sister had spoken to Coe's ex-wife about the conversations she had with Coe. Through the testimony of E.B.'s sister and Smith, Coe was able to present his argument that E.B.'s sister could have altered the text messages and Facebook printouts that she turned over to law enforcement. Through Smith's testimony and the Gmail printouts, Coe was able to make his argument that at some point he considered that he was being set up by his ex-wife and E.B.'s sister. While the excluded testimony may have been relevant to Coe's defense that he lacked the requisite intent, that he was aware that he was being set-up by his ex-wife and E.B.'s sister, the exclusion of the testimony of Coe's ex-wife did not preclude Coe from presenting his theory before the jury. The excluded testimony could have only incrementally furthered such theory. For this reason, the error, if any, was not of constitutional dimension. *See Potier*, 68 S.W.3d at 666.

Under Rule 44.2(b), we may not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Defense counsel conducted a voir dire examination of Coe's ex-wife. During the examination, Coe's ex-wife testified that she and Coe separated on May 23, 2011. She admitted that after her separation she assumed the online persona of "Nikki69Marie," a sixteen or seventeen year old. She testified she later spoke to Smith about her online chats with Coe as "Nikki69Marie." Coe's ex-wife denied that she attempted to set Coe up on the current charges.

After examining the record, we have fair assurance that the exclusion of the testimony of Coe's ex-wife, as reflected in Coe's bill of exception, did not have a substantial or injurious effect or influence in determining the jury's verdict. To the extent the excluded evidence lends some support to Coe's defensive theory, there was ample evidence to support the jury's verdict. We conclude that error, if any, in the exclusion of the complained-of evidence was harmless. We overrule Coe's issue regarding the exclusion of the testimony of Coe's ex-wife.

**B. Photographs Depicting Text Message Conversation on the Cell Phone of E.B.'s Sister**

Coe contends the trial court erred in admitting photographs taken of E.B.'s sister's cell phone depicting a text message conversation between Coe and E.B.'s sister, who was posing as E.B. Coe argues the photographs were not properly authenticated.

The issue of authentication arises when "'the relevancy of any evidence depends upon its identity, source, or connection with a particular person, place, thing, or event.'" *Campbell v. State*, 382 S.W.3d 545, 548-49 (Tex. App.—Austin 2012, no pet.) (quoting *Shea v. State*, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. ref'd)). "Evidence has no relevance if it is not authentically what its proponent claims it to be." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Rule 901(a) of the Texas Rules of Evidence provides that for a party to satisfy the requirement of authenticating or identifying an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). Rule 901(b) includes a list of evidence that satisfies this requirement, including testimony that an item is what it is claimed to be and evidence of the "appearance, contents, substance, internal

patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id*. 901(b).

The ultimate question of whether an item of evidence is what its proponent claims it to be is a question for the factfinder. *Tienda*, 358 S.W.3d at 638. In performing its gate-keeping function, the trial court need only decide "whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id*. Courts have admitted printouts of emails, Internet chat room dialogues, and text messages into evidence when the courts have found the printouts to be sufficiently linked to the purported author so as to justify the submission to the jury for its ultimate determination of authenticity. *Id*. at 639; *see also Campbell*, 382 S.W.3d at 549.

E.B.'s sister identified the photographs of text messages made and received between her personal cell phone and Coe's cell phone on August 11 and August 12. She testified that she took the photographs of the conversation and placed them on a flash drive. She testified that she knew the conversation was with Coe because she sent the message to the number he provided her through Facebook. Smith testified that the number Coe provided through Facebook was actually Coe's cell phone number. The events surrounding the messages sent to E.B.'s sister indicate

circumstantially that Coe was the author of the text messages. *See Tienda*, 358 S.W.3d at 641. When considered in combination with other circumstantial evidence in the record and the fact that Coe arrived in person at the designated place and time and announced his arrival by the same cellphone number, we hold a reasonable factfinder could have believed the text messages were created and sent by Coe. *See* Tex. R. Evid. 901(b)(1), (4). The factfinder was entitled to assess the weight to give Coe's defensive conspiracy and alteration theories once the State had produced a prima facie showing that the text and chat messages were created and sent by Coe.

Coe also argues the photographs do not satisfy the best evidence rule. Coe essentially argues that the best evidence would have been the actual cell phone of E.B.'s sister and not photographs of the conversation. Coe contends that he made a number of objections to the admission of the text messages "in the spirit of the best evidence rule[.]" Coe has not directed us to any part of the appellate record wherein he claims to have made these objections. Our review of the record indicates that Coe made a number of objections to the admission of the photographs: (1) he argued the photographs were not properly authenticated, (2) he argued the photographs did not reflect the entirety of the text conversation Coe had

27

with E.B.'s sister, (3) he argued the photographs had been altered, and (4) he argued the photographs were not relevant or material to the issues in the case.

Generally, to prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by the Rules of Evidence or by other law. Tex. R. Evid. 1002. "A duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Tex. R. Evid. 1003. An original is not required, and other evidence of the content of a writing, recording, or photograph is admissible, if the original is: (1) lost or destroyed; (2) not obtainable by judicial process; (3) located outside the state; (4) in possession or control of the opponent; or (5) not closely related to a controlling issue. *See* Tex. R. Evid. 1004.

We find no support for Coe's contention that he made a best evidence or Rule 1002 objection to the photographs of the text messages contained on E.B.'s sister's cell phone. The record reflects that the trial court ordered the State to provide Coe's counsel access to the cell phones in the State's possession. The record further supports that the State complied with the trial court's order and gave Coe's counsel access to the cell phones and an opportunity to review the contents therein. Coe never raised an objection or concern to the trial court regarding the

authenticity of the data contained on the cell phones. Coe's counsel never asked the trial court to admit any cell phone into evidence. Coe did not argue, as he now attempts on appeal, that the cell phone is the best evidence of the text messages exchanged between Coe and E.B.'s sister. We find Coe has not preserved this issue for review. *See* Tex. R. App. P. 33.1(a); *see also Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691-92.

## C. Photographs Depicting Facebook Conversation

In his second issue, Coe contends the trial court erred in admitting photographs taken of E.B.'s sister's computer screen depicting the Facebook conversation between Coe and E.B.'s sister, who was posing as E.B, because the photographs appear altered and were not properly authenticated.

At trial, the State argued that authentication was complete because there are identifying factors that suggest the Facebook account belonged to Coe, including that it contained his picture, his name, that E.B. had been friends with him on Facebook, and that E.B. knows Coe and his family. The court found the Facebook photographs admissible.

Regarding the Facebook photographs, E.B.'s sister testified that she was familiar with them. She testified that she took the photographs of the conversation as it occurred and then saved the photos onto the computer. She testified that she

had sent out the initial group message from E.B.'s account and that Coe responded to that message. E.B.'s sister testified that she believed Coe was the person that responded because the responses had his picture and name on them. E.B.'s sister denied altering any of the photographs.

We note that the content of the messages at issue purport to be messages sent from a Facebook account bearing Coe's name. In this case, the internal content of the Facebook postings—photographs, comments and friends list—was sufficient circumstantial evidence such that a reasonable juror could have found that the messages were authored and sent by Coe. *See Tienda*, 358 S.W.3d at 642. The messages contain internal characteristics that further tend to connect Coe as the author. First, the messages contain Coe's image. Second, the messages contain a reference to attending church with E.B. Finally, and most persuasive, the author of the messages sent E.B. a cell phone number which proved to be Coe's number. We conclude that the combination of facts in this case is sufficient to support a finding that the Facebook messages were created by and sent from Coe. We conclude the trial court did not err in admitting these messages.

**D. Screenshots Depicting Gmail Chat**

In his second issue, Coe also contends the trial court erred in admitting the screenshots depicting the Gmail chat between Coe and Smith because the

30

screenshots do not capture the full conversation. Coe also contends the trial court erred in admitting evidence that was not timely produced. We will address this argument regarding the screenshots under the standards of *Brady v. Maryland*. *See Brady v. Maryland*, 373 U.S. 83 (1963).

To establish reversible error under *Brady*, a defendant must satisfy a three-pronged test. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). The defendant must show (1) the State failed to disclose evidence (regardless of the prosecutor's good or bad faith); (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material, i.e., there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Id*.

During the hearing regarding Coe's *Brady* challenge, Smith testified that he captured the Gmail chat he had with Coe using the screen capture function on his computer. He testified that during his Gmail chat session with Coe, he had a computer problem that prevented him from either obtaining or saving particular screenshots of the conversation. As a result of this problem, some of the chat logs were lost. He explained that when he realized there was a problem, he attempted to preserve the conversation by using an iPad device, but that he never received the pictures he took with that device and the iPad was ultimately lost. He recalled that

31

part of the messages that were lost included a message where Coe indicated he would bring protection with him so that E.B. would not get pregnant. Smith testified that he did not intentionally fail to obtain the complete chat session, nor did he take the screenshots and then get rid of them. Smith explained that he was multitasking while he was capturing the images of the chat—he was in the middle of a chat session, trying to take screenshots as the chat was scrolling in real time down the screen, and trying to save each screenshot with a different file name and number. He explained that because of the nature of what he was doing, it was possible that the text on the screen rolled too fast for him to capture it and, as a result, he missed capturing a sentence or something in between the statements.

The trial court denied Coe's objection and, in so doing, explained that the argument that the Gmail chat session was incomplete went to the weight of the evidence and not to the admissibility. The trial court found that *Brady* was inapplicable because the State did not have possession of the missing portions of the Gmail chat session.

To the extent that Coe makes an argument on appeal that the State violated *Brady* in failing to produce the complete Gmail chat session, we conclude the record supports a finding that the State did not possess the missing portions of the Gmail chat session and thus, the trial court did not err in overruling Coe's *Brady*

32

objection. *See Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006) ("'*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.'"). There can be no *Brady* violation without suppression of favorable evidence that actually exists. *Id*. at 406-07. Here, there is no evidence that the missing parts of the Gmail chat actually exist. We also overrule Coe's challenge to the completeness of the Gmail chat sessions, as incompleteness goes only to the weight, not the admissibility of the evidence. *See Robinson v. State*, 739 S.W.2d 795, 802 (Tex. Crim. App. 1987) (complaint that evidence is not accurate goes to weight and not admissibility). Accordingly, the trial court did not err in admitting the screenshots of the Gmail chat session.

## E. Admissibility of Evidence of Extraneous Acts

Coe contends the trial court erred in admitting testimony of other extraneous acts of Coe during the guilt-innocence phase of trial.[6] A trial court's decision to admit evidence of extraneous offenses will not be reversed absent a clear abuse of discretion. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). Rule

---

[6]Within this argument, Coe also indicates that the testimony should have been excluded because it was not properly authenticated and was inadmissible hearsay. Coe failed to adequately brief these arguments on appeal. *See* Tex. R. App. P. 38.1(i).

of Evidence 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). A defendant can "open the door" to the admission of otherwise inadmissible extraneous-offense evidence to rebut a defensive theory. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding that defense counsel's opening statement can open the door to admission of extraneous-offense evidence to rebut a defensive theory raised in opening statement). "[A] party who 'opens the door' to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted." *Bowley v. State*, 310 S.W.3d 431, 435 (Tex. Crim. App. 2010).

During Coe's case in chief, he called Smith as a witness. Coe's counsel asked Smith whether Coe had a pattern or history of inappropriate sexual behavior. Smith testified that he did not know Coe's total prior history. In response to direct questions posed by Coe's counsel, Smith testified that he had no knowledge that Coe had any prior convictions for solicitation of prostitution, child pornography, voyeurism, or any sort of sexually-based crime.

Coe objected when the State sought to cross-examine Smith regarding other communications Coe had had with underage females. The trial court overruled Coe's objection, finding that Coe's counsel opened the door to this testimony

34

during counsel's direct examination of Smith. The trial court ruled that the State could question Smith in a very limited manner to directly controvert testimony elicited by Coe's counsel.

Smith testified that he was aware of specific instances that he would consider inappropriate sexual behavior with a minor. Smith testified that he was aware of messages Coe sent to someone that Coe met on a "hook-up site" in October 2011, where Coe acknowledged in the message that the recipient of his message was fifteen years old. Smith testified that the messages included a conversation wherein Coe asked the minor if she "want[ed] to try things[.]" We hold that the trial court could have reasonably concluded that, through his questioning of Smith, Coe opened the door to testimony concerning his extraneous inappropriate sexual behavior. *See Bowley*, 310 S.W.3d at 435; *Bass*, 270 S.W.3d at 563.

Coe argues that any probative value of the testimony was substantially outweighed by its prejudicial effect. While the evidence was prejudicial to Coe, that alone is insufficient to exclude otherwise relevant evidence. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

35

confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. The Court of Criminal Appeals summarized a Rule 403 analysis as requiring the trial court to balance

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

Here, the trial judge stated that Coe's counsel left a false impression with the jury through the examination of Smith. The trial court acknowledged the State's need to elicit additional testimony to correct the false impression but cautioned the State that it could only ask a very narrowly tailored set of questions. Our review of the record indicates that the State did not devote an inordinate amount of time presenting the testimony regarding Coe's extraneous inappropriate conduct. We do not believe the testimony had a strong tendency to confuse or distract the jury, particularly in light of the fact that the testimony was relatively brief. Further, the trial court properly instructed the jury in the charge on the use of evidence of other bad acts or offenses. The trial court's decision to admit the testimony concerning

Coe's extraneous inappropriate sexual behavior fell within the zone of reasonable disagreement and thus, was not an abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Accordingly, the evidence was properly admitted before the jury.

## V. Reference to E.B. as "Victim"

Coe filed a motion in limine prior to trial in which he asked the trial court to instruct the prosecutor to refrain from referring to E.B. as "the victim" before the jury. The trial court denied Coe's motion as to that item. As a subpart to his third issue, Coe contends the trial court erred when it allowed the State to refer to E.B. as a victim. He contends that by allowing the prosecutor to refer to E.B. in front of the jury as "a victim" and not as the "alleged victim," the trial court's actions amounted to a judicial determination that a crime had in fact occurred.

Coe fails to cite to any point in the record at which the prosecution referred to E.B. as a "victim" in front of the jury. Coe cites to one case in support of his argument, *Aldridge v. State*, 342 S.W.2d 104 (Tex. Crim. App. 1960). However, the *Aldridge* case concerns the disqualification of a trial judge and offers nothing in support of Coe's argument presented in this issue. *See id.* at 106-08. We conclude Coe has failed to adequately brief this issue on appeal. *See* Tex. R. App. P. 38.1(i) (adequate briefing contains appropriate citations to authorities and to the record).

37

Had Coe properly briefed this issue, we conclude any error would be harmless. Our own review of the appellate record indicates that the State referred to E.B. as a victim twice. During the State's direct examination of E.B.'s sister, the prosecutor asked E.B.'s sister if E.B. was the victim in this case, to which E.B.'s sister responded, "Yes." Coe's defense counsel objected to the State's referring to E.B. as a victim and argued that this reference assumes a crime has been committed. He further argued that this was an improper reference because Coe never spoke to E.B., never approached E.B., never had any sexual contact with E.B., never attacked E.B., never contacted E.B. online or otherwise, and only had social contact with E.B. at church. The trial court overruled Coe's objection, stating that E.B. was the named complainant. Later, during the State's closing argument, the prosecutor made the following statement: "This defendant is a wolf in sheep's clothing, and [E.B.] was his prey. She was the perfect victim." Defense counsel failed to object to the State's argument.

There is no indication in the record that the trial judge used the word "victim" to refer to E.B. in the presence of the jury. As indicated above, the record reflects that the prosecutor made this reference twice. Regarding a prosecutor's use of the word "victim" in reference to a complainant, we have previously observed:

> While use of the word "victim" assumes a crime has been committed, the fact that a prosecutor is of that view would not

> surprise a reasonable juror, nor would the prosecutor's use of the word in argument or voir dire generally be understood as anything other than the contention of the prosecution.

*Weatherly v. State*, 283 S.W.3d 481, 486 (Tex. App.—Beaumont 2009, pet. ref'd).

When used occasionally in a lengthy trial by the attorneys or witnesses, the word "victim" is not so inflammatory or prejudicial as to necessarily cause harm to the defendant. *Id.* We conclude that any error in the trial court's allowance of this reference in this instance was harmless. *See id.*; *see also* Tex. R. App. P. 44.2. We overrule Coe's third issue to the extent he claims error based on the prosecutor's two references to E.B. as the victim.

Having overruled each of Coe's issues presented on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 15, 2014
Opinion Delivered June 24, 2015
Do not publish

Before McKeithen, C.J., Kreger, and Horton, JJ.

39